Glee F. LITTLE, Independent Executrix of the Estate of James Phillip Little, Deceased, Petitioner,

v.

X–PERT CORPORATION, Relator.

No. D–3411.

Supreme Court of Texas.

Argued Oct. 12, 1993.

Decided Dec. 8, 1993.

Robert S. Flaniken, Oklahoma City, OK, Mark N. Buzzard, Pampa, for petitioner.

Warlick Thomas, Paul H. Williamson, Todd W. Boykin, Marty L. Rowley, Amarillo, for relator.

GONZALEZ, Justice, delivered the opinion of the Court, in which HIGHTOWER, DOGGETT, GAMMAGE and SPECTOR, Justices, join.

At issue in this case is who is entitled, under a Buy–Sell Agreement between the shareholders of a closely held corporation, to the proceeds of a life insurance policy taken out on a former shareholder at a time when he still owned shares. The corporation commenced this declaratory judgment action against the former shareholder's estate and the insurance company, claiming to be entitled to the proceeds. The trial court rendered summary judgment for the corporation, and the court of appeals affirmed. 856 S.W.2d 739 (1992). We conclude that the shareholder's estate is the rightful owner of the proceeds. We reverse the judgment of the court of appeals and remand this cause to the trial court for further proceedings consistent with this opinion.

I

In 1989, four couples, James and Glee Little, David and Myrna Smith, Alfred and Patricia Ann Smith, and Harold and Ruth Lawley, formed X–Pert Corporation. Each couple owned 25 percent of the corporation's outstanding shares. On June 1, 1989, all eight shareholders and X–Pert executed a Buy–Sell Agreement. For the shareholders' "mutual protection and for the more harmonious and successful management of said corporation," the Buy–Sell Agreement contained mutual covenants to buy and sell a shareholder's interest at death or if a shareholder wished to make an *inter vivos* sale of X–Pert stock. The covenants were intended to allow the surviving or remaining parties to the Buy–Sell Agreement to maintain ownership and control of the corporation.

To carry out the covenants applicable to a shareholder's death, the shareholders agreed in the Buy–Sell Agreement to buy life insurance policies on James Little, David Smith,

Alfred Smith, and Harold Lawley, with X–Pert named as legal beneficiary. X–Pert was to maintain the policies and pay all premiums. Upon the death of any insured shareholder, the surviving spouse would have the option of "accepting said insurance proceeds ... as then payable to X–PERT CORP.," in exchange for her 25 percent stock ownership, or of remaining a 25 percent owner of X–Pert, in which case "said insurance proceeds payable to X–PERT CORP. upon the death of any such deceased insured stockholder shall become an asset of X–PERT CORP." (Paragraph 3). If the net equity value of the deceased shareholder's 25 percent ownership interest exceeded the amount of insurance proceeds, then the difference was to be paid in installments to the spouse. If, however, the insurance proceeds were greater than the net equity value of the ownership interest, the excess insurance proceeds were not to inure to the benefit of X–Pert, but were still payable to the spouse.[1] (Paragraph 6).

Paragraph 10 of the Buy–Sell Agreement contained the following provision, which is the chief focus of dispute in this suit:

> In the event of the sale of a stockholder's interest during his or her lifetime, or upon the termination of this buy-sell agreement for any reason, each respective insured stockholder shall have the right to retain all contracts of insurance on his or her life appertaining to this agreement.

On March 31, 1991, James Little and his wife sold all of their X–Pert stock to fellow shareholder Alfred Smith. Until that time, James Little had been an officer and director of X–Pert. James Little died approximately one month later. Pursuant to the Buy–Sell Agreement, a $250,000 insurance policy had been purchased on his life from Jackson National Life Insurance Company, showing X–Pert as the owner and beneficiary.

Jackson National Life Insurance Company paid the proceeds to X–Pert after James Little's death. After Petitioner Glee Little, James Little's widow and executrix of his estate, demanded that X–Pert pay her the insurance proceeds for her husband's estate, X–Pert brought this declaratory judgment action. X–Pert sought a declaration that it was the rightful recipient of the proceeds and that its obligations, if any, under the Buy–Sell Agreement had been fully performed. Mrs. Little counterclaimed that the estate was entitled to the proceeds under Paragraph 10.[2] Jackson National Life Insurance Company sought and obtained a temporary restraining order prohibiting X–Pert from spending or commingling any of the insurance proceeds. By agreement of the parties, the proceeds were later deposited to an account under the control of the district clerk.

X–Pert moved for summary judgment on the entire case, arguing that the Buy–Sell Agreement granted it the right to the insurance proceeds as a matter of law.[3] Little moved for summary judgment on the issue of liability but not on her claim for breach of fiduciary duty. The trial court granted X–Pert's motion, rendering judgment for the corporation. The trial court held that X–Pert was entitled to the proceeds of the policy, with interest accrued, and to attorneys' fees from Little. The trial court also held that X–Pert owed no further duty or obligation to Little with regard to the policy. In affirming, the court of appeals held that although the plain intent of Paragraph 10 was to give James Little a right to the insurance proceeds upon the sale of his stock, the summary judgment evidence showed that he had not exercised that right. The court of appeals also held that X–Pert owed no duty to Little to change the owner and beneficiary of the policy even if a fiduciary relationship

---

1. The covenants applicable to an *inter vivos* sale of stock did not involve the life insurance policies, but instead merely required the shareholder to offer the shares to X–Pert and to the other shareholders before selling them to an outside party. (Paragraph 8).

2. Little further alleged that X–Pert breached fiduciary duties owed to her and her husband's estate by asserting a contrary right to the proceeds,

by denying Little's rights in the policy, by refusing to deliver the policy, and by refusing to process Little's rights in the policy in a timely, reasonable, and prudent manner.

3. X–Pert also argued that because Little was not entitled to the proceeds, there was no breach of fiduciary duties by X–Pert's failure to pay.

existed. We granted Mrs. Little's application for writ of error.

## II

■ Mrs. Little does not dispute X–Pert's status as the legal beneficiary under the insurance contract, to which neither she nor her husband was a party. Nor does she contest the propriety of the insurance company's payment of the death benefits to X–Pert. Rather, her argument is that the Buy–Sell Agreement establishes the rights between her husband's estate and X–Pert, and that, under Paragraph 10, X–Pert is deemed to have received the death benefits on behalf of the estate.[4] The court of appeals erred, she argues, in adding an unstated requirement to Paragraph 10, that her husband have taken some affirmative step before his death to claim the policy benefits.[5]

We conclude that the wording of Paragraph 10, considered in light of the other contract provisions and the purposes of the Buy–Sell Agreement, unambiguously supports Mrs. Little's interpretation. The purpose of the Buy–Sell Agreement was to maintain ownership of the corporation with the existing shareholders, and the life insurance was procured to provide funds to implement the agreement in the event of an in-

sured shareholder's death. This purpose ceased to exist after an insured shareholder made a lifetime sale of his or her stock. Paragraph 10 accordingly granted a selling shareholder the "right to retain all contracts of insurance on his or her life." X–Pert does not dispute that this clause granted the selling shareholder the *right to acquire* the full benefits of the policy for no additional consideration, but argues that some affirmative action was required to exercise that right (e.g., asking X–Pert to assign the policy or change the beneficiary designation).

Although the wording of Paragraph 10 may arguably support X–Pert's interpretation if viewed in isolation, we do not believe it does so when considered with the remaining provisions of the Buy–Sell Agreement. First, Paragraph 10 does not expressly require a selling shareholder to affirmatively elect to receive the benefits of the life insurance policy. Further, there appears to be no reason why an express election would be necessary. As discussed, the stated purpose for the life insurance disappeared on Mr. Little's inter vivos sale of his stock, and X–Pert concedes that there was no business reason for the corporation to maintain life insurance on a former shareholder.[6] More

---

**4.** It is clear that the final disposition of the insurance proceeds was a contractual matter solely between X–Pert and the shareholders, viewed by them as distinct from the insurer's payment according to the policy terms. Paragraph 11 of the Buy–Sell Agreement states:

> It is understood by the parties hereto that in issuing policies of insurance pursuant to this agreement, all such insurance companies shall have no liability except as set forth in their respective policies. Such insurance companies shall not be bound to inquire into or take notice of any of the covenants herein contained as to the policies of insurance nor as to the application of the proceeds of such policies.... Upon the death of an insured stockholder, said insurance company shall be discharged from all liability upon the payment of all policy proceeds in accordance with the policy provisions, without regard to this agreement or any amendment thereto.

For this reason, many of the authorities relied upon by X–Pert are inapposite. For example, X–Pert points to the provisions of the insurance contract dealing with change of beneficiary, and attempts to invoke the rule that a change of beneficiary will be given effect only if there is substantial compliance with the policy provi-

sions. *See, e.g., Creighton v. Barnes,* 152 Tex. 309, 257 S.W.2d 101, 102–03 (1953). This principle does not apply, because Mrs. Little is not claiming to be the beneficiary under the policy, but rather is alleging a contract right under the Buy–Sell Agreement enforceable against X–Pert.

**5.** X–Pert argues that Mrs. Little has not preserved this argument for our review because she did not raise it in her motion for rehearing in the court of appeals or present it by written motion or response in the summary judgment proceedings in the trial court. *See* Tex.R.App.P. 131(e); Tex.R.Civ.P. 166a(c). We disagree. Although Mrs. Little's labeling of the point of error in her application to this Court differs from the wording she used in the court of appeals and at trial, the substance of her argument is the same as it has been at all stages of this litigation: that Paragraph 10 entitles her to the insurance proceeds and imposes no condition of changing the policy beneficiary. We therefore conclude that error has been preserved. *See Pool v. Ford Motor Co.,* 715 S.W.2d 629, 632–33 (Tex.1986).

**6.** X–Pert did, however, maintain an insurable interest in Mr. Little's life, even after the stock sale. *See* Tex.Ins.Code art. 3.49–1 (Vernon 1981).

importantly, there is no real election for a selling shareholder to make. There is no reason why a selling shareholder would ever elect *not* to receive the benefits of the existing insurance policy under the circumstances of this case.

The premium on Mr. Little's policy had been paid in full through July 1991, and he had the right under the contract to receive the full benefits of this policy without paying any additional consideration. Under these circumstances, we believe it to be an unreasonably strained construction of the agreement to infer that Mr. Little was required to affirmatively "elect" to receive this insurance. Although he would have been required to decide after July 1991 whether to continue the insurance, Mr. Little was not required to do anything before that time to obtain the benefits of the paid-up policy.

■ X–Pert contends that, even if Paragraph 10 automatically transferred *ownership* of the policy, the corporation is nonetheless entitled to the death proceeds as the named beneficiary. Relying on cases construing property settlements attendant to divorce, X–Pert argues that a contract transferring an insurance policy must reflect a "clear intent" to surrender beneficiary rights. *See, e.g., Partin v. de Cordova,* 464 S.W.2d 956 (Tex.Civ.App.—Eastland 1971, writ ref'd); *Gillespie v. Moore,* 635 S.W.2d 927 (Tex.App.—Amarillo 1982, writ ref'd n.r.e.). X–Pert's reliance on these cases is misplaced. The cited cases simply reflect the rule that courts will not construe a general assignment of ownership of an insurance policy in a property settlement agreement to include an assignment of benefits, unless that intent is clear from the agreement. *See* 4 COUCH ON INSURANCE 2D § 27:115, at 792 (Rev.Ed. 1984). The Buy–Sell Agreement was an ongoing contract creating rights in the insurance proceeds independent of who was named as the legal beneficiary under the policy. Indeed, one of the central purposes of this agreement was to determine rights to the insurance proceeds upon death of an insured. Under paragraphs 3 and 6, for example, the spouse of a deceased shareholder had the right to receive the proceeds in exchange for his or her stock. Notably,

these provisions entitled the surviving spouse to the full amount of the proceeds, notwithstanding that it exceeded the value of the stock, and notwithstanding that the corporation was the legal beneficiary. Under these circumstances, it would be an anomaly to construe Paragraph 10 as automatically transferring ownership of the insurance policy but not the proceeds.

■ Whether a contract is ambiguous is a question of law. *Coker v. Coker,* 650 S.W.2d 391, 394 (Tex.1983); *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 518 (Tex.1980). For the foregoing reasons, we conclude that Paragraph 10 of the Buy–Sell Agreement is not ambiguous. Upon Mr. Little's sale of his stock, he became entitled, without further action, to the full benefits of the policy insuring his life, a right which inured to his estate. The trial court therefore should have denied X–Pert's motion for summary judgment, and granted Mrs. Little's motion for partial summary judgment.

For the foregoing reasons, we reverse the judgment of the court of appeals and remand the cause to the trial court for further proceedings consistent with this opinion.

PHILLIPS, Chief Justice, joined by HECHT, CORNYN and ENOCH, concurs with the judgment of the Court.

Although I concur in the judgment of the Court remanding this cause to the trial court, I disagree with the Court's conclusion that the Buy–Sell Agreement, taken as a whole, imposes a duty on X–Pert to hand over the proceeds of the life insurance policy to her. X–Pert offers substantial countervailing arguments as to why the Agreement entitles it to retain the proceeds. Rather than adopting either position as a matter of law, I would return this issue to the finder of fact for resolution.

By providing that an insured shareholder has "the *right* to retain all contracts of insurance," rather than simply "retains" all contracts of insurance, Paragraph 10 of the Agreement invites the reading adopted by the court of appeals: that it confers only an option that must be exercised in some man-

ner. Moreover, in using the verb "retains," the paragraph indicates that it is simply preserving ownership rights arising from another source. Yet we know from Paragraph 3 that an insured shareholder did not have an absolute ownership right in the insurance proceeds that could be enjoyed without action by his surviving spouse. Rather, the surviving spouse merely had the option, after the insured's death, to exchange a 25% interest in the company for the insurance proceeds.

Moreover, Paragraph 10 speaks only to a right to retain the insurance *contract.* It says nothing about entitlement to the proceeds payable upon death of the insured. The failure of the parties to expressly address payment of the insurance proceeds in Paragraph 10, as they did in Paragraphs 3 and 6, creates, at least in my mind, an ambiguity.

Whether a contract is ambiguous is a question of law. *Coker v. Coker,* 650 S.W.2d 391, 394 (Tex.1983); *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 518 (Tex.1980). For the foregoing reasons, I conclude that Paragraph 10 of the Buy–Sell Agreement is "reasonably susceptible to more than one meaning" on the question of who is entitled to the insurance proceeds under these circumstances, and therefore is ambiguous. *See Coker,* 650 S.W.2d at 393. Although Mrs. Little does not specifically argue that Paragraph 10 is ambiguous, instead contending that her interpretation is correct as a matter of law, the proper remedy is to return this issue to the trial court for a resolution of the ambiguity by the trier of fact. *See id.* at 392.

The trial court and court of appeals held that one party's arguments were conclusive, while this Court holds the opposite. I disagree with all these judgments, believing that this dispute may properly be resolved only by the finder of fact.